IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANE DOE 77, | ) |
| | ) |
|       Plaintiff, | ) |
|   v. | ) Cause No. 3:12-cv-00268-SCW |
| | ) |
| MASSAC UNIT SCHOOL DISTRICT #1, | ) |
| a corporation, WILLIAM HATFIELD, | ) |
| DONALD SMITH, REUBEN BREMER, | ) |
| and DARRYL BENSON, | ) |
| | ) |
|       Defendants. | ) |

**RESPONSE TO PLAINTIFF'S MOTION TO QUASH SUBPOENA AND/OR MOTION TO RECONSIDER PLAINTIFF'S MOTION TO QUASH BY NON-PARTIES SURVIVOR'S NETWORK OF THOSE ABUSED BY PRIESTS AND BARBARA DORRIS**

NOW COME the Defendants Massac Unit School District No. 1, William Hatfield, Donald Smith, and Reuben Bremer (hereinafter collectively referred to as "Defendants"), by and through their attorneys, TUETH, KEENEY, COOPER, MOHAN & JACKSTADT, P.C., and for their Response to the Motion to Quash Subpoena and/or Motion to Reconsider Plaintiff's Motion to Quash by Non-Parties Survivor's Network of Those Abused by Priests and Barbara Dorris state as follows:

On March 29, 2013, the Defendants caused a subpoena to be served on the Survivor's Network of Those Abused by Priests or SNAP regarding information SNAP has relative to Jane Doe 77's claims. Specifically, the Defendants have asked for any communications that SNAP has had with Plaintiff's legal counsel or designated expert witness, Dr. Stephen Peterson. (Doc. 146, Exhibit A). In an Order dated May 2, 2013, this Court modified the subpoena and directed SNAP to provide the requested documents for *in camera* inspection by the Court. SNAP now challenges the Court's Order asserting that the items requested are privileged, or if a privilege

1

does apply that the Defendants should be barred from receiving the requested information because it is only an attempt to harass, annoy and oppress SNAP.

The Defendants respectfully requests that this Court deny the SNAP's Motion as (1) a federal privilege does not apply to the information requested by the Defendants; (2) even if the court did recognize a federal privilege for rape crisis center communications, the privilege would not apply in this instance because the communications were not of the type intended to be protected by the privilege; and (3) Defendants are not required to illustrate that the information sought is sufficiently relevant and necessary to its case in order for SNAP to comply with the subpoena.

> **A.    A federal privilege does not apply to the information requested by the Defendants**

Under Fed. R. Civ. P. 45(c)(3)(A)(iii), the court must quash or modify a subpoena that "requires disclosure of a privileged or other protected matter, if no exception or waiver applies." Federal Rule of Evidence 501 dictates that "privilege" is interpreted pursuant to federal common law except in civil cases in which state law governs privilege related to a claim or defense for which state law supplies the rule of decision. *See* Fed. R. Evid. 501. Federal common law guides the recognition of privilege even if a complaint includes a pendent state law claim. *See Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981). Here, the complaint alleges both state law claims and claims based on federal statute; as such, "[t]he [federal] common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege." Fed. R. Evid. 501. Courts have repeatedly expressed disinclination to expand the privileges offered under federal law. *See, e.g., Mem'l Hosp. for McHenry Cnty.*, 664 F.2d at 1061 (stating that "because evidentiary privileges operate to exclude
2

IDL0030154

relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed").

In *Jaffee v. Redmond*, the Supreme Court recognized a federal privilege protecting "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." 518 U.S. 1, 14 (1996) (additionally extending the privilege to confidential communications made with licensed social workers in the course of psychotherapy treatment). The Court's decision to recognize this psychotherapist-patient privilege was primarily based on three rationales: 1) such professionals "provide a significant amount of mental health treatment"; 2) their "clients include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist"; and 3) "the vast majority of States explicitly extend a testimonial privilege" to such professionals. *Id*. at 15-17. Consequently, although state laws that guarantee privileges are a consideration in a federal court's recognition of a privilege, they are in no way determinative, as SNAP has suggested.

SNAP relies on *Jaffee* to persuade this Court to expand the established psychotherapist privilege to include communications between a crisis rape counselor professional and a client (hereinafter, "rape crisis center privilege"). The expansion of this rule is problematic both because of the federal courts' historical reluctance to expand common law privileges and because rape crisis center communications are distinguished from subsequently recognized privileges that have expanded the psychotherapist privilege recognized in *Jaffee*.

In the 17 years since the *Jaffee* decision, only one federal district court has recognized the rape crisis center privilege: *U.S. v. Lowe*, 948 F. Supp. 97 (D. Mass. 1996). Although this case recognizes the privilege, it does so after discussing only one of the factors the *Jaffee* Court utilized in creating the psychotherapist privilege: the presence of state laws that have adopted

3

the privilege. *Id*. at 99. The court states that *Jaffee* does not control "a determination of whether the federal privilege extends to communications with a rape crisis center employee or volunteer" and gives little explanation for its extension of the privilege beyond the recognition of state privileges. *Id*. This analysis surely falls short of the procedure needed to create a new federal common law privilege, particularly in light of the court's disfavor of restricting evidence. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 710 (1974) (stating that testimonial privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth"). Accordingly, the Defendants ask that this Court deny the expanding of a privilege to rape crisis counselors.

To further support its arguments, SNAP identifies two cases in which the psychotherapist privilege has been extended to other contexts involving unlicensed mental health or counseling professionals: *Oleszko v. State Compensation Insurance Fund*, 243 F.3d 1154 (9th Cir. 2001) (communications made to Employee Assistance Program (hereinafter "EAP") employees in order to receive counseling services) and *Richardson v. Sexual Assault/Spouse Abuse Resource Center*, 764 F. Supp. 2d 736 (N.D. Md. 2011) (communications made to unlicensed counselors). However, these cases are distinguishable from the pending matter in that they both relate to communications made between a client and a counseling professional in the course of seeking mental health treatment. In *Oleszko*, the court extended a privilege to communications between clients and EAP counselors who were trained as counselors and held themselves out as counselors to gather information about clients for mental health treatment. 243 F.3d at 1157. Likewise, in *Richardson*, the professional at issue, although not licensed, was supervised by a licensed counselor. 764 F. Supp. 2d at 740. In both instances, the courts relied on the *Jaffee* factors to extend the privilege, focusing primarily on the fact that the unlicensed

4

IDL0030154

counselors were providing mental health treatment to patients who could not otherwise afford the services of psychiatrist or psychotherapist. *See Oleszko*, 243 F.3d at 1157. At least once court has criticized *Oleszko*'s holding, arguing that the "[c]ourt missed the significance of the Supreme Court's limitation of the privilege to licensed professionals," which is necessary because "licensure provides a minimum, if rough, measure of assurance that the privilege is implicated only when the patient communicates with one who, by satisfying the requirements for licensure, has demonstrated some threshold level of ability to assist the patient in improving her mental health." *Jane Student 1 v. Williams*, 206 F.R.D. 306, 309 (S.D. Ala. 2002).

SNAP has not alleged that the professionals whose communications it seeks to protect are considered either licensed or unlicensed counselors or that they practiced mental health services intended to treat Plaintiff. In fact, the only information that Defendant seeks to obtain that SNAP specifically objects to relates to communications between SNAP and Dr. Peterson and SNAP and Plaintiff's attorneys. (*See* Doc 146, Exhibit A.) SNAP does not claim that these communications were made by the type of mental health professional whose communications with a patient would be protected under an extension of the psychotherapist or crisis rape center privilege. In fact, SNAP, in its motion to this Court, describes itself as a "support group." (Doc 172, p. 1)

Nothing in the document submitted to this Court does SNAP state or otherwise discuss in its Motion that it provides counseling or psychotherapy services to those individuals that contact SNAP. Rather, SNAP appears to be a pass-through entity. It accepts information and then directs the individual to a mental health service provider.

Perhaps the best analogy is that SNAP provides the same or similar services to Alcoholics Anonymous. *United States v. Schwensow*, 141 F.3d 650 (7th Cir. 1998), the Court
5

counselors were providing mental health treatment to patients who could not otherwise afford the services of psychiatrist or psychotherapist. *See Oleszko*, 243 F.3d at 1157. At least once court has criticized *Oleszko*'s holding, arguing that the "[c]ourt missed the significance of the Supreme Court's limitation of the privilege to licensed professionals," which is necessary because "licensure provides a minimum, if rough, measure of assurance that the privilege is implicated only when the patient communicates with one who, by satisfying the requirements for licensure, has demonstrated some threshold level of ability to assist the patient in improving her mental health." *Jane Student 1 v. Williams*, 206 F.R.D. 306, 309 (S.D. Ala. 2002).

SNAP has not alleged that the professionals whose communications it seeks to protect are considered either licensed or unlicensed counselors or that they practiced mental health services intended to treat Plaintiff. In fact, the only information that Defendant seeks to obtain that SNAP specifically objects to relates to communications between SNAP and Dr. Peterson and SNAP and Plaintiff's attorneys. (*See* Doc 146, Exhibit A.) SNAP does not claim that these communications were made by the type of mental health professional whose communications with a patient would be protected under an extension of the psychotherapist or crisis rape center privilege. In fact, SNAP, in its motion to this Court, describes itself as a "support group." (Doc 172, p. 1)

Nothing in the document submitted to this Court does SNAP state or otherwise discuss in its Motion that it provides counseling or psychotherapy services to those individuals that contact SNAP. Rather, SNAP appears to be a pass-through entity. It accepts information and then directs the individual to a mental health service provider.

Perhaps the best analogy is that SNAP provides the same or similar services to Alcoholics Anonymous. *United States v. Schwensow*, 141 F.3d 650 (7th Cir. 1998), the Court

IDL0030154

which found that statements made to Alcoholics Anonymous volunteer telephone operators were not protected by a common law privilege (relying on operators' lack of "credentials that might qualify them as licensed to receive privileged communications"). Based on SNAP's own statements to this Court that it is an advocacy group, the Defendants ask this Court to apply the reasons in *United States v Schwensow* to the pending Motion filed by SNAP.

> **B.** **Assuming arguendo, this court a federal privilege for rape crisis center communications, the privilege would not apply in this instance because the communications were not of the type intended to be protected by the privilege.**

If this court does recognize a rape crisis center privilege, that the privilege does not apply to the pending matter because the communications SNAP seeks to protect are those confidential communications between a counseling professional and a client seeking mental health treatment. Analogizing to the psychotherapist privilege, the privilege sought does not consist of broad protection for all communications inherent in a rape crisis center. Rather, as the Court explained in *Jaffee*, the privilege attaches only to "confidential communications between [the licensed professional] and her patien[t] in the course of diagnosis and treatment" or "in the course of psychotherapy." 518 U.S. at 15. The Ninth Circuit has explained that the privilege is further limited to only instances in which the therapist "practices his craft, not whenever a therapist and a patient communicate." *United States v. Romo*, 413 F.3d 1044, 1048 (9th Cir. 2005). Thus, even when the privilege is recognized, it is not a broad rule that exempts all communication from discovery.

Even if a rape crisis center privilege did protect communications between a client and SNAP, it does not protect the communications sought by Defendant (between SNAP and Dr. Peterson and SNAP and Plaintiff's attorneys) because any privilege in regard to those communications does not extend to SNAP—even under the statute SNAP has identified. SNAP

argues that the requested documents between SNAP and Dr. Peterson and SNAP and Plaintiff's attorneys should be held confidential and thus privileged because a client enjoys a confidential relationship with both her physician and her attorneys.[1] SNAP argues that this confidentiality applies to communications between SNAP and these third parties because the third parties (Plaintiff's attorneys) were "expressing the interests" of the Plaintiff at the time of the communications under 735 ILCS 5/8-802.1(c)(1). This argument is not persuasive because it is simply an application of Illinois state law, which is not dispositive in the court's consideration of a federal common law privilege.

Additionally, even if the statute were dispositive, it would not extend confidentiality to the circumstance that SNAP is describing. The statute that SNAP references states that the "confidential nature of the communication is not waived by: the presence of a third person who further expresses the interests of the victim at the time of the communication." 735 ILCS 5/8-802.1(c)(1). The statute merely states that when a communication is made between a victim and a rape crisis center counselor in the presence of a third party who is aligned with the victim's interests, there has been no waiver of privilege under Illinois state law. However, that language cannot be interpreted to preserve the confidentiality of all communications between rape crisis center counselors and third parties concerning a client. Rather, the intent of the statute is to preserve confidentiality when a victim and counselor speak in the presence of a third party. In other words, protecting the communications of a victim. In this matter, the Defendants seek information related to the apparent relationship that exists between SNAP, Plaintiff's attorneys and Dr. Peterson. Even under a generous interpretation of this statute, these communications are not protected.

---

[1] In the pending matter, the Plaintiff does not enjoy a confidential relationship with Dr. Peterson. Plaintiff retained Dr. Peterson as an expert witness, accordingly, any information provided to Dr. Peterson is not privileged.

IDL0030154

To the extent any information is deemed privileged, this court has taken the necessary precaution of reviewing the documents through an *in camera* inspection. Accordingly, the court, and not the parties or SNAP, become the gate keeper of determining whether the information is privileged and not to be disclosed to the parties in this litigation. If this court, after review of the information, determines that the information is subject to a privilege, this debate ends. However, it is for the Court to make this decision, not any party or entity interested in the proceedings.

    **C.    Defendants are not required to illustrate that the information sought is sufficiently relevant and necessary to its case in order for SNAP to comply with the subpoena.**

SNAP argues that because Defendants "have made no showing as to why they need documents from SNAP and why or how the documents or information they seek could not be gained through other avenues," SNAP should not be compelled to comply with the subpoena. (Doc 172, p. 9). In doing so, SNAP relies on *Litton Industries, Inc. v. Chesapeake & O. R. Co.*, 129 F.R.D. 528 (E.D. Wisc. 1990), *citing Shields Enterprises, Inc. v. First Chicago Corporation*, 1988 U.S. Dist. LEXIS 14950 (N.D. Ill. 1988) and *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530 (C.D. Ill. 1991) to establish that it is not obligated to provide confidential information until the Defendant can establish the relevance of the information sought and its necessity to the case.

Each of these cases finds that "[i]f it is established that confidential information is being sought, the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Shields Enterprises, Inc.,* 1988 U.S. Dist. LEXIS at *10, *citing* 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2043 at 301 (1970). However, this rule only applies to confidential information such as that described in

Fed. R. Civ. P. 45(c)(3)(B)(i): "disclosing a trade secret or other confidential, research, development, or commercial information." By referencing this section of Rule 45, SNAP is unsuccessfully applying a rule associated with a court's permissive decision to quash a subpoena because of the presence of confidential commercial or trade secret information. In fact, each of the cases that SNAP cites involves subpoenas related to confidential commercial information—not confidential medical, counseling, or psychotherapist records that SNAP is trying to exempt from discovery under Fed. R. Civ. P. 45(c)(3)(a)(iii). *See Litton Industries, Inc.* 129 F.R.D. at 529 (stating that the information sought to be excluded from subpoena is "highly sensitive and, in the hands of a competitor, would provide that company with an unfair advantage"); *Shields Enterprises, Inc.*, 1988 U.S. Dist. LEXIS at *4 (relating to "disclosure of sensitive and proprietary business plans and projections" that would place the company at a competitive disadvantage); *Greater Rockford Energy and Technology Corp.*, 138 F.R.D. at 537 (stating that requested information constituted confidential business information that would be harmful if disclosed to competitors).

Although SNAP correctly states the law as it applies to trade secrets and other confidential proprietary commercial information, this authority has no application to the pending matter. SNAP has not argued that the information requested represents confidential commercial information the disclosure of which would cause harm to the organization, as in the cited cases. Rather, SNAP has only contended that the information should be excluded as a result of a newly recognized federal privilege protecting its communications. As such, the Defendant is under no obligation to prove that the information subpoenaed is "sufficiently relevant and necessary to [the] case to outweigh the harm disclosure would cause to" SNAP.

9

IDL0030154

## CONCLUSION

Based on the foregoing, the Defendants, Massac Unit School District No. 1, William Hatfield, Donald Smith, and Reuben Bremer (hereinafter collectively referred to as "Defendants"), respectfully request that SNAP be required to produce the documents identified in the subpoena, and as modified by the Court, for an in-camera inspection.

Respectfully submitted,

**TUETH, KEENEY, COOPER, MOHAN & JACKSTADT, P.C.**

By:   s/Merry C. Rhoades
      Merry C. Rhoades, #6192801
      101 West Vandalia, Suite 210
      Edwardsville, Illinois 62025
      (618) 692-4120
      (618) 692-4122 (facsimile)
      mrhoades@tuethkeeney.com

*Attorneys for Massac Unit District No. 1, William Hatfield, Don Smith, Rueben Bremer*

10

IDL0030154

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on the 7th day of June, 2013 via the Court's Electronic Filing System:

Kenneth M. Chackes
Nicole E. Gorovsky
Chackes, Carlson & Halquist, LLP
906 Olive Street, Suite 200
St. Louis, MO 63101
kchackes@cch-law.com
ngorovsky@cch-law.com

Mark S. Johnson
Johnson & Schneider, L.L.C.
212 North Main Street
Cape Girardeau, MO 63701
lindsay@jsslawfirm.com

Lynette M. Petruska
Brandy B. Barth
Pleban & Petruska Law, LLC
2010 S. Big Bend Blvd.
St. Louis, MO 63117
lpetruska@plebanlaw.com

By: s/Merry C. Rhoades